UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WESLEY SHANE GLOVER                              CIVIL ACTION

VERSUS                                           NO. 11-2808

KANSAS CITY SOUTHERN                             SECTION "H" (2)
RAILWAY COMPANY

## ORDER AND REASONS ON MOTION

This is a personal injury claim for damages brought in this court under the Federal Employers Liability Act ("FELA"). Plaintiff Wesley Shane Glover is a railroad worker who sues his employer, Kansas City Southern Railway Company ("KC Southern"), asserting claims arising from an on-the-job accident and alleged resulting injuries.

Glover filed a Motion to Compel Supplemental Responses to Written Discovery Requests. Record Doc. No. 53. This motion was deferred in part as to his Requests for Production Nos. 2, 5, and 6, seeking (1) statements taken by claim agent, Randy Vanicor, on August 27,[1] 2011 of Lenny Conzonere, Lester Thomas and Matthew Gauthier; (2) Vanicor's "Incident Investigative Summary" dated September 12, 2011; (3) Vanicor's "interview briefs" concerning Thomas and Conzonere, and (4) a diagram of the subject railcar by Vanicor. Pursuant to my order, Record Doc. No. 83, defendant has submitted these documents for in camera review, along with Vanicor's affidavit in support of defendant's assertion that they are protected by the attorney-client privilege and/or work product protection.

---

[1] Although Conzonere's statement is dated August 24, 2011, Vanicor has submitted an affidavit stating that the actual date of the statement is August 27, 2011. Record Doc. No. 111 at ¶ 14.

In opposition, plaintiff has submitted excerpts of depositions of Vanicor from previous cases to support his assertion that the documents are <u>not</u> protected by attorney-client privilege or work product protection. Record Doc. No. 110. Pursuant to my order, Record Doc. No. 108, plaintiff's counsel also filed a supplemental memorandum addressing defense counsel's letter transmitting the <u>in camera</u> documents,[2] and defendant was granted leave to file a response. Record Doc. Nos. 115-118.

Having considered the record, the applicable law and the written submissions of counsel, the deferred portion of the motion is GRANTED IN PART AND DENIED IN PART as follows.

Defendant, as the party resisting discovery, bears the burden of <u>proof</u> to demonstrate the existence of any privilege in the materials, including the attorney-client privilege and work product doctrine. <u>United States v. Newell</u>, 315 F.3d 510, 525 (5th Cir. 2002); <u>In re Santa Fe Int'l Corp.</u>, 272 F.3d 705, 710 (5th Cir. 2001); <u>Hodges, Grant & Kaufman v. United States</u>, 768 F.2d 719, 721 (5th Cir. 1985); <u>Ingraham v. Planet Beach Franchising Corp.</u>, No. 07-3555, 2009 WL 1076717, at *1 (E.D. La. Apr. 17, 2009); <u>Kiln Underwriting Ltd. v. Jesuit High Sch.</u>, No. 06-04350, 2008 WL 108787, at *4-5 (E.D. La. Jan. 9, 2008) (citing <u>Hodges</u>, 768 F.2d at 721); <u>United States v. Impastato</u>, No. 05-325, 2007 WL 2463310, at *2 (E.D. La. Aug. 28, 2007) (citing <u>United States v. Harrelson</u>, 754 F.2d 1153,

---

[2] Defendant's May 17, 2013 letter, transmitting the in camera documents to me, and its attached additional evidence consisting of the affidavit of Randy Vanicor and exhibits has been filed in the record. Record Doc. No. 111.

1167 (5th Cir. 1985); United States v. Kelly, 569 F.2d 928, 938 (5th Cir. 1978)).  This is an evidentiary burden, which defendant has tried to meet with the affidavit of Vanicor and from the content of the in camera documents themselves.

Work product protection from discovery extends to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for [a] party or its representative (including the . . . party's attorney . . . or agent)," Fed. R. Civ. P. 26(b)(3)(A), but does not extend to the "underlying relevant facts."  Blockbuster Entm't Corp. v. McComb Video, Inc., 145 F.R.D. 402, 403 (M.D. La. 1992) (citing United States v. El Paso Co., 682 F.2d 530, 542 (5th Cir. 1982); Hill Tower, Inc. v. Dep't of Navy, 718 F. Supp. 562, 566 (N.D. Tex. 1988)); accord 8 C.A. Wright, A.R. Miller & R.L. Marcus, Federal Practice and Procedure § 2024, at 494 (3d ed. 2010).

The work product "privilege can apply where litigation is not imminent, as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation."  Udoewa v. Plus4 Credit Union, 457 F. App'x 391, 393 (5th Cir. 2012) (quoting In re Kaiser Alum. & Chem. Co., 214 F.3d 586, 593 (5th Cir. 2000)) (internal quotation omitted) (emphasis added).

"The mere fact that a document is prepared when litigation is foreseeable does not mean the document was prepared in anticipation of litigation . . . ."  Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co., 19 F.3d 1432, 1994 WL 58999, at *3 (6th Cir. 1994) (citing Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992)).

Even "[e]stablishing that a document was prepared after litigation was commenced is insufficient to prove that the document was prepared in anticipation of litigation. . . . What is crucial is that 'the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'" Robinson v. Tex. Auto. Dealers Ass'n, 214 F.R.D. 432, 449 (E.D. Tex. 2003) (quoting In re Kaiser Alum., 214 F.3d at 593) (emphasis added), rev'd on other grounds, 2003 WL 21911333 (5th Cir. July 25, 2003); accord Global Oil Tools, Inc. v. Barnhill, No. 12-1507, 2013 WL 1344622, at *6 (E.D. La. Apr. 3, 2013); Guzzino v. Felterman, 174 F.R.D. 59, 63 (W.D. La. 1997); Blockbuster, 145 F.R.D. at 404.

In addition, "[t]he law is settled that 'excluded from the work product doctrine are materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation.'" Guzzino, 174 F.R.D. at 62 (quoting United States v. El Paso Co., 682 F.3d 530, 542 (5th Cir. 1982) (citing Fed. R. Civ. P. 26(b)(3) advisory committee notes)); accord 8 C.A. Wright, A.R. Miller & R.L. Marcus, Federal Practice and Procedure § 2024, at 503 (3d ed. 2010); see also Hill Tower, Inc., 718 F. Supp. at 565 ("The mere fact this report deals with facts, opinions, and recommendations that later may be the focus of litigation does not establish that there was the expectation of litigation when this document was drafted.") (citing Senate of P.R. v. U.S. Dep't of Justice, 823 F.2d 574, 586 (D.C. Cir. 1987); Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 865 (D.C. Cir. 1980)).

Thus, "[i]f the document would have been created regardless of whether the litigation was also expected to ensue, the document is deemed to be created in the ordinary course of

4

business and not in anticipation of litigation." Global Oil Tools, 2013 WL 1344622, at *6 (citing S. Scrap Mat'l Co. v. Fleming, 2003 WL 21474516, at *6 (E.D. La. June 18, 2003); Piatkowski v. Abdon Callais Offshore, L.L.C., No. 99-3759, 2000 WL 1145825, at *1 (E.D. La. Aug, 11, 2000)).

Opinion or core work product merits special protection from discovery pursuant to Rule 26(b)(3)(B). "At its core, the work-product doctrine shelters the mental processes of the attorney [or others named in the Rule], providing a privileged area within which he can analyze and prepare his client's case." United States v. Nobles, 422 U.S. 225, 238-39 (1975).

> Nonetheless, when a party is ordered to produce its work product because the discovering party has made the showing mandated by Rule 26(b)(3)(A)(i) and (ii), Rule 26(b)(3)(B) requires the court to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Thus, tangible materials that contain the mental impressions, conclusions, opinions or legal theories of a party's attorney or representative, otherwise known as "opinion work product," are afforded a high degree of protection.

In re Katrina Canal Breaches Consol. Litig., No. 05-4182, 2010 WL 2522968, at *1 (E.D. La. June 14, 2010) (additional quotation omitted) (citing Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981); Dunn v. State Farm Fire & Cas. Co., 927 F.2d 869, 875 (5th Cir. 1991); Int'l Sys. & Controls Corp. Sec. Litig., 693 F.2d at 1240; Bonneau v. F & S Marine, Inc., No. 09-3336, 2010 WL 1254552, at *2 (E.D. La. Mar. 25, 2010); Bross v. Chevron U.S.A. Inc., No. 06-1523, 2009 WL 854446, at *5 (W.D. La. Mar. 25, 2009); Blockbuster, 145 F.R.D. at 403-04) (additional citations omitted).

Federal common law applies to assertions of privilege in this federal question case under FELA. Fed. R. Evid. 501. The federal "attorney-client privilege protects <u>communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice</u>. The party invoking attorney-client privilege has [t]he burden of demonstrating [its] applicability.  The application of the attorney-client privilege is a question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents." <u>King v. Univ. Healthcare Sys., L.C.</u>, 645 F.3d 713, 720-21 (5th Cir. 2011) (quotations and citations omitted) (emphasis added).

It is axiomatic that the attorney-client privilege "only protects disclosure of confidential <u>communications</u> between the client and attorney; <u>it does not protect disclosure of underlying facts</u>." <u>United States v. Edwards</u>, 39 F. Supp. 2d 716, 723 (M.D. La. 1999) (Polozola, C.J.) (citing <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 395-96 (1981); <u>In re Six Grand Jury Witnesses</u>, 979 F.2d 939 (2d Cir. 1992); <u>United States v. Freeman</u>, 619 F.2d 1112 (5th Cir. 1980); <u>Computer Network Corp. v. Spohler</u>, 95 F.R.D. 500 (D.D.C. 1982)) (emphasis added). "'Pre-existing facts that underlie the client's confidential communications, <u>whether oral or written</u>, are not privileged simply because the client disclosed them to an attorney for the purpose of obtaining legal services.'" <u>Id.</u> at 736 (quoting <u>Weinstein's Federal Evidence</u>, § 503.14[4][a] (2d ed. 1998), citing <u>Upjohn</u>, 449 U.S. at 395) (emphasis added).

6

In its written responses to the subject Requests for Production Nos. 2, 5 and 6, KC Southern asserted that the documents in question are protected from discovery by both the attorney-client privilege and the work product doctrine. Record Doc. No. 53-5 at pp. 13-15. No evidence has been submitted that supports assertion of the attorney-client privilege. The only reference to counsel in Vanicor's affidavit is that on August 26, 2011, he "contacted . . . outside counsel for KCS[outhern] to discuss this matter," and then took the three witness statements "following communication with" defendant's counsel. Nothing in Vanicor's affidavit or on the face of the documents themselves establishes that the documents were communications between lawyer and client made to give or obtain legal advice. Thus, KC Southern has failed to meet its burden to prove that these documents fall within the scope of confidential communications that are protected under the attorney-client privilege.

Instead, Vanicor's affidavit focuses on his attempt to establish that the materials are work product.

According to his affidavit, Vanicor is a General Claims Agent for KC Southern. Record Doc. No. 111 at ¶ 2. Vanicor's deposition testimony submitted by plaintiff establishes that in the ordinary course of his employment as a claims agent, Vanicor is "responsible for the investigation response to accidents that occur on the railroad within my certain territory." Record Doc. No. 110. (Vanicor Deposition, January 18, 2012, at p. 4 ln. 22-25). His investigations typically consist of surveying the area, taking measurements,

photographs, interviewing the crew and any witnesses to the incident, and taking notes. Record Doc. No. 110. (Vanicor Deposition, April 16, 2003, at p. 10 ln. 19-23). The thrust of Vanicor's deposition testimony submitted by plaintiff is that it is part and parcel of Vanicor's ordinary "job duties" for KC Southern and a normal response to any accident for him to investigate and obtain statements from the crew involved, regardless whether litigation was anticipated. Record Doc. No. 110. (Depositions of Vanicor, May 7, 2009, p. 21 ln. 9-17; June 28, 2007, p. 7 ln. 21-23; April 16, 2003, p. 4, ln. 12-17 and p. 5.).

Vanicor's affidavit and the content of the in camera documents establish that the incident giving rise to this claim occurred on August 24, 2011, at about 6:00 p.m. (Incident Investigative Summary). Glover was injured in Reserve, LA while performing his duties as a KC Southern brakeman. (Incident Investigative Summary). Vanicor learned of the incident at 9:10 p.m. and immediately commenced his ordinary investigation by obtaining information about the incident and requesting that the train car involved be secured for his inspection. (Incident Investigative Summary). Vanicor decided to travel to the accident scene the next morning, August 25, 2011, to obtain photos and statements from the train crew. (Incident Investigative Summary). He obtained the photos, but subsequently learned that Glover had sought medical attention for his injuries and instructed the hospital not to share his medical information with KC Southern. (Incident Investigative Summary).

Vanicor's affidavit states that it was at that point in time, on August 25, 2011, when he learned that Glover had directed the hospital <u>not</u> to release his medical records, that he

anticipated litigation would ensue. (Vanicor's Affidavit at ¶ 5). His conclusion that litigation would occur was confirmed in his mind on the next morning, August 26, 2011, when he received a letter via e-mail from plaintiff's counsel notifying KC Southern that his firm was representing Glover with regard to the injuries sustained on August 24, 2011. (Vanicor's Affidavit at ¶ 8).

As to the work product doctrine's application to the three witness statements, Vanicor's affidavit is telling more for what it does <u>not</u> say than for what it says. Specifically, nothing in Vanicor's affidavit or in the content of the in camera materials themselves establishes that Vanicor's <u>primary</u> <u>motivating</u> <u>purpose</u> in creating the witness statements was in anticipation of litigation or for trial preparation. His affidavit and the in camera materials establish that on August 25, 2011, the day after the accident occurred, he learned about it and had already commenced his ordinary investigation, he anticipated that litigation would ensue. As the case law cited above establishes, the mere fact that a document is prepared when litigation is foreseen does not mean it was prepared in anticipation of litigation. Vanicor's deposition testimony submitted by plaintiff establishes that the taking of witness statements was done by Vanicor in the ordinary course of his job function as to every railroad accident in his territory, regardless whether litigation was anticipated or ever occurred. Moreover, the content of the in camera materials establishes that Vanicor had determined and already set out to take the witness statements, as part of the ordinary business of his employer, KC Southern, immediately upon his learning about

9

the accident and before he anticipated litigation. The statement in his affidavit at Paragraph 18 that "[a]ll of the investigative work I did in this matter and after August 26, 2011 was in anticipation of litigation" is a legal conclusion he is not qualified to make and which I reject. Based on the evidence provided by the parties, I find that the statements taken from Conzonere, Thomas and Gauthier on August 27, 2011 were conducted in the ordinary course of KC Southern's business and Vanicor's non-litigation related job duties, and are therefore <u>not</u> protected from discovery by the work product doctrine and/or Rule 26(b)(3) because the primary motivating purpose of Vanicor's creation of the witness statements was not to aid in the litigation or trial of the defense of this claim.

On the other hand, Vanicor's "Interview Briefs," diagram, and "Incident Investigative Summary," the remaining non-statement in camera materials cannot so clearly be found to be unprotected. Vanicor's affidavit clearly states that the "Incident Investigative Summary," created on September 12, 2011, contains his own "mental impressions formed during the course of my investigation." (Vanicor Affidavit at ¶ 17). My in camera review of these three interpretive documents corroborates this statement in Vanicor's affidavit and convinces me that, unlike the three witness statements, these three documents contain the kind of core work product containing the mental impressions, conclusions and theories of an agent of defendant that constitute core work product and that Rule 26(b)(3)(B) directs be afforded a high degree of protection.

For the foregoing reasons, the deferred portion of plaintiff's Motion to Compel Supplemental Responses to Written Discovery Requests, Record Doc. No. 53, is granted in part in that the witness statements of Lenny Conzonere, Lester Thomas and Matthew Gauthier must be produced by defendant to plaintiff no later than **August 19, 2013**. However, the motion is denied in part as to the "Interview Briefs," "Incident Investigative Summary" and diagram, which are protected from discovery by the work product doctrine.

New Orleans, Louisiana, this ___2nd___ day of August, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE